IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>MORTON SALT, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 1:24-cv-1689<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended (Title VII), and Title I of the Americans with Disabilities Act of 1990, as amended (ADA), to correct unlawful employment practices on the basis of race, disability, and retaliation, and to provide appropriate relief to Charging Party Daryl Dorsey.

JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action also is instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) (Title VII) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division. As set forth below, employment practices alleged to be unlawful were committed in Cleveland. Defendant Morton Salt, Inc. conducts business throughout the United States, including in Cleveland.

3. As set forth below, Charging Party Daryl Dorsey filed a charge with the United States Equal Employment Opportunity Commission in Cleveland, Ohio, alleging discrimination and retaliation. The EEOC's Cleveland Office conducted the administrative process concerning the charge and issued the Determination and the Notice of Conciliation Failure, as described below. Documents and information concerning the violations are located and maintained in Cleveland, Ohio.

## PARTIES

4. Plaintiff, the Equal Employment Opportunity Commission (the Commission or EEOC), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and the ADA.

5. At all relevant times, Defendant Morton Salt, Inc. (hereinafter "Morton Salt"), an Illinois corporation, has continuously been doing business in the State of Ohio and has continuously had at least 15 employees.

6. At all relevant times, Morton Salt has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7), and Title VII.

7. At all relevant times, Morton Salt has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2), and Title VII.

ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of Title VII and the ADA by Morton Salt.

9. On May 9, 2024, the Commission issued to Morton Salt a Determination finding reasonable cause to believe that Title VII and the ADA were violated and inviting Morton Salt to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. On July 26, 2024, the Commission issued to Morton Salt a Notice of Failure of Conciliation advising Morton Salt that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

12. Morton Salt is a corporation that manufactures and distributes salt at more than 20 production facilities throughout the United States, including at facilities in Lake County and Wayne County, Ohio.

13. Morton Salt employed Charging Party, as defined by Title VII and the ADA.

14. Charging Party is disabled as defined by the ADA because he is diagnosed with gout, a physiological impairment that limits metabolic, circulatory, and musculoskeletal systems, and because he has a record of disability and/or Morton Salt regarded him as disabled.

15. Charging Party is a Black (African American) male.

16. On or about May 31, 2022, Morton Salt hired Charging Party to work in a labor position.

17. After Morton Salt hired Charging Party, the company learned that he has a disability, has a record of disability, and/or the company regarded him as disabled.

18. During the course of his employment with Morton Salt, Charging Party was mentored, trained, and/or worked with a white employee named Kurt Conkle.

19. Conkle, who is white, had been working for Morton Salt since 2008.

20. During the course of Conkle's employment, Morton Salt created and maintained records regarding his conduct (hereinafter "Morton Salt records").

21. Before Morton Salt hired Charging Party, Morton Salt records show that Morton Salt was on notice that Conkle had a reported history of using slurs like "n****r," "worthless n****r," and "dumb cunt," "fat lazy cunt," "ass kissing bastard and cunt," and "cock sucking bitch."

22. Morton Salt records show that, at least by 2017, Morton Salt was on notice that an employee reported that Conkle engaged in sexually harassing behavior or in harassment on the basis of, or because of, sex, and that Conkle retaliated against a woman who objected to and reported his conduct.

23. Morton Salt records show that, at least by 2019, Morton Salt was on notice that employees reported that Conkle engaged in harassing, abusive, mean-spirited, and threatening behavior, and reported to Morton Salt that employees were afraid to come forward about Conkle for fear of retaliation.

24. Morton Salt records show that, at least by 2019, Morton Salt was on notice that employees reported that Conkle used sexist and racist slurs, such as those described above, and that his conduct was, according to at least one statement, "way out of hand." Other statements

describing Conkle indicated that he had been involved in such behavior and conduct for an extended period and suggested that something should have been done earlier about his conduct.

25. Morton Salt records show that Morton Salt issued a letter dated June 17, 2019, stating that employees reported that Conkle was "harassing, vulgar, mean spirited, intimidating, and threat[en]ing," conduct, and the company concluded that his behavior was "inappropriate and cannot and will not be tolerated." Further, the letter states that Conkle's "unwelcomed behavior is considered harassing to his co-workers creating a Hostile Work Environment which places his co-workers in an intimidating, hostile and offensive work environment." In the letter, Morton Salt stated that Conkle's behavior violates the Morton Salt "Workplace Violence and Harassment Policies."

26. Morton Salt records show that on or about June 17, 2019, Morton Salt concluded that Conkle should be fired because of his conduct, as alleged above, and that Conkle was fired.

27. Morton Salt records show that, approximately one week later, Morton Salt issued another letter dated June 26, 2019, stating that the company would reinstate or rehire Conkle. That letter reiterates and repeats that Conkle violated the Morton Salt Workplace Violence and Harassment policies but stated that Morton Salt would reinstate or rehire him.

28. Morton Salt reinstated or rehired Conkle on or about June 26, 2019, and Conkle remained employed at Morton Salt throughout Charging Party's employment.

29. At all relevant times, Alan Longstreth has functioned as a high-level managerial and human resource official at Morton Salt.

30. Alan Longstreth signed the June 17 and June 26, 2019, letters described above in Paragraphs 25 through 28.

31. During Charging Party's employment at Morton Salt, Conkle subjected him to unfavorable treatment on the basis of race.

32. On July 25, 2022, Charging Party attended a meeting at Morton Salt with other employees including Conkle. During the meeting, Conkle made statements suggesting that some people who were attending the training were stupid, slow, or did not know how to follow directions or read, including using the words "those people," or words to that effect, to refer to them.

33. After the above-described meeting, Charging Party spoke to Conkle and asked him what he meant including asking Conkle what he meant by "those people" and whether he meant that Charging Party or Black people were stupid or could not read. Conkle did not deny that he meant Charging Party or Black people were stupid or could not read.

34. Charging Party reported Conkle's conduct to the Morton Salt human resource office on July 25, 2022.

35. As of July 25, 2022, Morton Salt was on notice that Conkle had a history of using racial slurs and of engaging in harassing, intimidating, threatening, and hostile conduct, as described above; that he had violated the Morton Salt Workplace Violence and Harassment policies; and that his conduct supported, warranted, and justified the termination of his employment at Morton Salt.

36. Charging Party's opposition to and/or report of Conkle's conduct constituted protected activity, as defined by Title VII.

37. According to Morton Salt records, a Morton Salt employee spoke to Conkle and to Charging Party regarding Charging Party's complaint made on July 25, 2022, and prepared

6

some written material reflecting information gathered from them. That material does not state that Charging Party had engaged in any improper conduct regarding his interaction with Conkle.

38. Morton Salt human resources staff or personnel did not investigate the complaint that Charging Party submitted regarding Conkle on July 25, 2022, nor did Morton Salt interview anyone other than Conkle and Charging Party or prepare or take notes reflecting any such interviews.

39. Alan Longstreth did not investigate the complaint that Charging Party submitted regarding Conkle on July 25, 2022. Further, Longstreth did not investigate or address whether there was any connection between Conkle's previous misconduct and Charging Party's complaint or the conduct that Charging Party reported.

40. Morton Salt records show that no action was taken against Conkle concerning the complaint that Charging Party made about Conkle on July 25, 2022.

41. Morton Salt records show that Charging Party was supervised by Drew Mummert during his employment at Morton Salt.

42. Morton Salt records show that, on July 26, 2022, Charging Party was issued an evaluation that rated him "unsatisfactory" in the category: "Relations with others." The reason written on the evaluation for that rating was: "Altercation with Kurt Conkle."

43. Morton Salt records show that Mummert signed the evaluation that is described above, on or about July 28, 2022.

44. The "unsatisfactory" rating given to Charging Party, as described above, was unwarranted, and taking such action against Charging Party constituted unlawful retaliation and discrimination on the basis of race. Morton Salt records show that, on July 26, Charging Party

7

also was given unsatisfactory ratings for attendance. Such ratings also constituted discrimination and retaliation.

45. Morton Salt records show that, on Monday, August 2, 2022, Charging Party reported to Mummert that his car had been tampered with on or about July 29, 2022, including damaging or rendering inoperable the brakes, and that Conkle and/or someone supporting or assisting him, had likely done so in retaliation. Charging Party requested security footage to assist in determining what occurred, including Conkle's involvement.

46. Morton Salt records show that Mummert advised Longstreth of Charging Party's complaint made about Conkle on or about August 2, 2022, and he advised Longstreth of the request for security footage. According to Morton Salt records, minutes later Longstreth replied: "Thanks. I'm going to consider it handled."

47. Neither Morton Salt nor Longstreth investigated Charging Party's complaint made on or about August 2, 2022.

48. Morton Salt records show that no action was taken against Conkle concerning the complaint that Charging Party made on or about August 2, 2022.

49. On August 3, 2022, Morton Salt removed Charging Party from the job he had been performing, generally known as working in the pellet area, and moved him to a different department or function. The transfer was not voluntary and Charging Party did not request it.

50. Charging Party was subjected to disparate terms and conditions of employment and retaliation continuing through the termination of his employment.

51. On August 24, 2022, Morton Salt received notices from the Ohio Bureau of Worker's Compensation (BWC) scheduling Charging Party for a mandatory independent

8

medical examination to determine whether he had any permanent partial impairment resulting from injuries he sustained while working for a previous employer.

52. On August 24, Mummert forwarded the BWC notices to Longstreth with an email that said, among other things, that Charging Party has a "permanent partial impairment" and that Mummert expressed concerns or reservations about Charging Party continuing to work because of such impairment. Mummert suggested to Longstreth that the company contact a healthcare provider to make inquiries about whether Morton Salt could and/or would aggravate his impairment.

53. On September 22, 2022, Morton Salt terminated Charging Party.

54. The reasons asserted for Charging Party's discharge and the allegations made against him concerning related matters are pretextual. Additionally, Morton Salt records show that persons to whom Morton Salt allegedly compared Charging Party were treated more favorably, including persons identified as white.

55. On or about September 27, 2022, Charging Party reported race discrimination and retaliation to Morton Salt. According to Morton Salt records, the complaint was shared or viewed by Morton Salt regional and/or upper-level human resource personnel and corporate or executive personnel. Regional human resource personnel who addressed, processed, and made decisions about the complaint about Charging Party's employment status include Regional Manager Luke Fausnaugh, a Cleveland-based Morton Salt regional human resource official.

56. Charging Party further engaged in protected activity when he contacted and submitted complaints regarding Morton Salt to the United States Equal Employment Opportunity Commission in Cleveland, Ohio.

57. Morton Salt knew that Charging Party had engaged in protected activity by contacting the United States Equal Employment Opportunity Commission while it was considering and making decisions about his complaint and employment status, as referenced above.

58. Morton Salt took materially adverse action against Charging Party because he engaged in protected activity including, but not limited to, failing to investigate his charges concerning Conkle, failing to investigate whether he had been subjected to race discrimination and/or retaliation in violation of Title VII, sustaining the termination of his employment, and refusing to rehire or reinstate him.

59. Morton Salt decided not to reinstate or rehire Charging Party.

## TITLE VII VIOLATIONS

60. The EEOC reasserts the allegations above, as if fully set forth herein.

61. Charging Party is a person protected by Title VII, as amended, because he is Black (African American).

62. Charging Party was qualified for the positions he held with Morton Salt.

63. Morton Salt discriminated against Charging Party on the basis of race, including when the company subjected him to disparate treatment, disparate terms and conditions of employment, discipline, and discharge; when the company refused to reinstate or rehire him; and when the company failed to investigate or take appropriate action concerning his complaints or reports about Conkle, race discrimination, retaliation, and wrongful termination.

64. Race was a but-for cause for the adverse action taken against Charging Party.

65. The reasons Morton Salt asserts for the adverse action are not non-discriminatory.

66. The reasons Morton Salt asserts for the adverse action are pretextual.

67. Persons who are not in Charging Party's protected classes, including Conkle and white workers identified by Morton Salt as purported comparators were treated more favorably than Charging Party.

68. Charging Party engaged in protected activity when he opposed discrimination and retaliation and when he engaged in protected participation activities, as described above.

69. Morton Salt took materially adverse employment action against Charging Party because he engaged in protected activity including, but not limited to, subjecting him to discipline and discharge; refusing to reinstate or rehire him; failing to investigate or take appropriate action concerning his complaints or reports about Conkle, race discrimination, retaliation, and wrongful termination; and taking other materially adverse action.

70. As a result of the violations described above, Charging Party was deprived of wages and employment benefits and suffered other harm that is compensable under Title VII.

71. The unlawful employment practices complained of above were intentional.

72. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

## COUNT II/ADA VIOLATIONS

73. The EEOC reasserts the allegations above, as if fully set forth herein.

74. At all relevant times, Charging Party was protected under the ADA from discrimination and he was qualified as defined by the Act.

75. Charging Party is protected by the ADA because he is a person with a disability, has a record of disability, and/or was regarded by Morton Salt as disabled.

76. Morton Salt regarded Charging Party as disabled because he has gout and/or because the company concluded that he had another "permanent partial impairment."

11

77. Morton Salt took adverse action against Charging Party because it regarded him as disabled, as described above.

78. The reasons Morton Salt asserts for the adverse action are pretextual.

79. As a result of the violations described above, Charging Party was deprived of wages and employment benefits and suffered other harm that is compensable under the ADA.

80. The unlawful employment practices complained of above were intentional.

81. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discriminating against persons because of race and/or disability and from engaging in unlawful retaliation.

B. Prohibit Defendant from engaging in practices that discriminate because of disability and otherwise engage in practices that infringe on rights secured under the ADA and Title VII.

C. Order Defendant to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by the Title VII and the ADA and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

D. Order Defendant to make whole Charging Party by providing to him appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative

relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

  E. Order Defendant to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

  F. Order Defendant to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

  G. Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  H. Grant such further relief as the court deems necessary and proper in the public interest.

  I. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel


s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office


s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office


s/Emily Datnoff
EMILY DATNOFF
Trial Attorney
United States Equal Employment
Opportunity Commission
Baltimore Field Office
31 Hopkins Plaza, 14th Floor
Baltimore, MD 21201
Emily.Datnoff@eeoc.gov
Tel. 410-801-6708